UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **JERRY MICHAEL HOLLANDER** | **04-14550** |
| **SHEILA STORY HOLLANDER** | SECTION A |
| DEBTORS | CHAPTER 7 |
| **ROBERT SIGILLITO** | ADVERSARY NO. |
| **RHONDA SIGILLITO** | **04-1193** |
| PLAINTIFFS | |
| VERSUS | |
| **JERRY MICHAEL HOLLANDER, JR** | |
| **SHEILA STORY HOLLANDER** | |
| DEFENDANTS | |

**MEMORANDUM OPINION**

Robert and Rhonda Sigillito ("Sigillitos") filed an adversary proceeding against Jerry and Sheila Hollander ("Hollanders") on September 9, 2004, alleging that the Hollanders concealed redhibitory defects when the Hollanders sold the Sigillitos a house located at 2665 Claiborne Street, Mandeville, Louisiana. The Sigillitos requested that the Court render the claim nondischargeable pursuant to 11 U.S.C. § 523(a)(2)A. On January 14, 2009, this Court awarded the Sigillitos a $26,561.43 nondischargeable judgment which was amended to $28,424.43 ("Judgment").[1] On appeal, the District Court for the Eastern District of Louisiana ("District Court") affirmed in part and vacated in part the Judgment, remanding for further findings on the Sigillitos' fraud claim.[2] On

---

[1] Pleadings 104, 114.

[2] Pleading 130.

remand, this Court found that the Hollanders were not liable for damages in fraud.[3]  The District Court affirmed.[4]  After appeal to the Court of Appeals for the Fifth Circuit, remand was ordered concerning the burden of proof applied on the Sigillitos' fraud claim.[5]

**I. Jurisdiction**

During the course of this proceeding, the Sigillitos filed a proof of claim for damages allegedly sustained as a result of defects contained in a home purchased from the Hollanders.  In addition, the Sigillitos filed an adversary complaint objecting to the discharge of their debt.  The Hollanders objected to the validity of the Sigillitos' proof of claim and denied their complaint for nondischargeability.

The issues presented for determination arise out of the Objection to the Sigillitos' proof of claim[6] and Complaint Objecting to Dischargeability.[7] Specifically, the allegations and denials asserted require the liquidation of the Sigillitos' claim against the estate, as well as, its dischargeability.  The liquidation of disputed claims against the estate falls within the core jurisdiction of this Court.[8]  Similarly, a determination of a claim's dischargeability is also core in nature.[9]  Just as importantly, the liquidation of claims against the estate and the applicability of a

---

[3] Pleading 132, 133.

[4] Pleading 146.

[5] Pleading 148.

[6] Claim no. 8.

[7] Pleading 1.

[8] 28 U.S.C. § 157(2)(B).

[9] 28 U.S.C. § 157(2)(J).

debtor's discharge to a particular claim are also matters properly assigned under the United States Constitution to an Article I court for final determination.

The Bankruptcy Code is an administrative scheme confected by Congress that creates, in favor of claimants, specific, public rights to a debtor's estate while bestowing other public rights in favor of debtors.[10] The bankruptcy court's exercise of power over the liquidation of a creditor's claim has long been affirmed by various courts.[11] Under the Constitution, Congress has been given the authority to make laws or regulations regarding bankruptcy.[12] Nothing in the Constitution grants to any citizen the right of discharge. That right is instead a Congressionally created public right the administration of which can be proscribed by Congress and delegated for enforcement to an Article I court.[13]

Thus, consideration of the issues presented are both core and a proper exercise of the authority delegated to this Court by Congress under the Bankruptcy Code. As such, a final judgment on these issues will not offend the separation of powers principle.

---

[10] *See e.g.* the priority of distributions to unsecured claimants is dictated by 11 U.S.C. §§ 502, 503, 1129, 1325 and not by state law. Similarly, 11 U.S.C. § 363 grants protection to creditors secured by cash collateral or to co-owners or tenants for the estate's use, sale, or lease of property. These protections are creations of the bankruptcy law not otherwise available under federal or state law.

[11] Eight (8) justices of the present United States Supreme Court have indicated that a bankruptcy court's exercise of power over the liquidation of proofs of claim was a constitutional delegation of power from Congress. See, *Stern v. Marshall*, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). The eight (8) were comprised from both the majority and dissent. Only Justice Scalia declined to express an opinion on the subject in a concurring opinion. *Id*. at 2620-2621.

[12] U. S. Constitution, Article 1, § 8, cl. 4.

[13] *Stern v Marshall*, *supra*; *Commodity Futures Trading Commission v Schor*, 478 U.S. 833, 106 S.Ct. 3246 (1986) at 851-854.

**II. Facts**

The facts of this case are well documented in this Court's Memorandum Opinion dated January 14, 2009,[14] the District Court's Order and Reasons dated August 24, 2009,[15] and the Fifth Circuit's Opinion dated August 16, 2011.[16] The Court incorporates them by reference.

**III. Law and Analysis**

The Sigillitos' Complaint against the Hollanders arises under two (2) theories or causes of action. The Sigillitos' first cause of action, in redhibition, has already been decided and is not on remand.[17]

The limited issue on remand is the application of the proper standard of proof to establish a claim in fraud. In this Court's prior opinion, a clear and convincing standard of proof was applied. This was in error. The proper burden of proof is preponderance of the evidence. Nevertheless, although the burden of proof is reduced, the result remains unchanged because under either standard, this Court finds that the Sigillitos have failed to prove their claim for fraud.

    **A. Dischargeability v. Louisiana Fraud**

The Sigillitos allegations of fraud arise out of two (2) questions answered by the Hollanders on the Real Estate Condition Disclosure Statement ("Disclosure Statement") the Sigillitos received prior to purchasing the home. Question 15 required the Hollanders to disclose all known defects

---

[14] Pleading 103.

[15] Pleading 129.

[16] *Sigillito v. Hollander (In re Hollander)*, 438 Fed.Appx. 274, 2011 WL 3629479 (5th Cir. 2011).

[17] Pleadings 103, 104, and 114.

existing in the house. Question 8 required the Hollanders to list all "alterations" to the house. In each case, the Hollanders failed to provide information regarding pre-existing problems with the crawl space's ventilation.

As to question 15, the prior Memorandum Opinion held that the Hollanders spent considerable time and money repairing ventilation problems arising from the construction of the crawl space in their home.[18] They consulted with experts in home construction, flooring, and flooring manufacture, as well as, their insurance company's construction expert. The aggregate of this advice was followed in replacing, repairing, and correcting problems they experienced with inadequate ventilation in the crawl space. Allstate Insurance Company's construction expert, Mr. Quick, went so far as to tell Mrs. Hollander that if she followed the advice of the experts, her home would be defect free and no disclosure on sale would be required. Mrs. Hollander also testified to this exchange with Mr. Quick and this Court found both parties to be candid and credible.

Based on the evidence presented, the Court concluded that the Hollanders did not know that the repairs were partially unsuccessful and that defects in the home existed at the time of sale. Because the Hollanders' did not know of surviving defects in their home and were justified in their belief that all prior problems had been cured, they responded to question 15 truthfully.

However, as to question 8, the prior Memorandum Opinion found that the Hollanders failed to disclose the repairs or alterations to the home that they had undertaken. The Hollanders explained their failure to disclose as a mistaken belief that the term "alterations" did not include the recent and extensive redesign of the home's flooring system. This Court found that explanation insufficient. Because the Hollanders' omission was also material and based on a writing, the debt to the Sigillitos

---

[18] Pleading 103.

was declared nondischargeable. The Sigillitos now request that the same omissions be declared fraudulent.

Debts are nondischargeable under the Bankruptcy Code under a slightly different standard from those that are fraudulent. While it would be rare for a fraudulent debt to be dischargeable, the debt need not be fraudulent to be nondischargeable. The difference is in the intent of the party perpetrating the wrong. The Court found the Sigillitos' claim nondischargeable because they proved by a preponderance of evidence that: (1) the Hollanders omitted a material fact on the Disclosure Statement; (2) the Hollanders knew the omission concealed a prior problem; (3) the Sigillitos justifiably relied on the omission; and (5) the Sigillitos' loss was proximate to their reliance on the omission.[19] Under the Bankruptcy Code, an omission or misrepresentation must be knowingly made, but the intent to harm need not be present. Grossly negligent statements can support a claim for nondischargeability[20] while fraud must be intentional.[21]

In this case, the Court found that the Hollanders purposefully omitted disclosing the extent of the prior problems with their house. The opinion also found that the omission was not out of a desire to harm the Sigillitos but out of their belief that the disclosure might irrationally scare potential buyers away. The Court specifically found, and reconfirms, that the Hollanders did not omit the information because they thought it important, but just the opposite. Because they believed

---

[19] *General Electric Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005).

[20] *Id*. ("An intent to deceive [under section 523(a)(2)(A)] may be inferred from 'reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation.'")

[21] *Colvin v. Divivison of Employment Security, Dept. Of Labor, State of Louisiana,* 132 So.2d 909, 912 (La. App. 1 Cir. 1961) (If a misrepresentation is made without the intent to defraud, fraud has not been proven.).

that all problems had been resolved, they did not see the harm in failing to provide the information required by question 8. This was not their option to take. For dischargeability, an intent to deceive may be inferred from "[r]eckless disregard for the truth or falsity of a statement combined with the magnitude of the resultant misrepresentation."[22]

Because the Hollanders were less than candid with the Sigillitos, the Court found the debt nondischargeable. However, it is critical to note that there was no finding that the Hollanders intended harm to the Sigillitos. This point is the difference between fraud and dischargeability.

La.C.C. art. 1953 provides:

> Fraud is a misrepresentation or a suppression of th truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may result from silence or inaction.

Because the Court has already held that the Hollanders suppressed or omitted information, and the failure related to a material fact in the contract, the question presented concerns the Hollanders' intent to cause a "loss or inconvenience"or "obtain an unjust advantage." As previously held, the Court confirms that the Hollanders had no active desire to cause a loss to the Sigillitos. Therefore the remaining question is whether their omission was designed to gain an "unjust advantage."

**A. What Constitutes An Unjust Advantage?**

According to Louisiana jurisprudence, Louisiana courts have defined an unjust advantage as one in which one party takes advantage of another due to unequal positions arising from some infirmity, such as young or old age, mental incapacity, lack of education, or inexperience in business.

---

[22] *Equitable Bank v. Miller (In re Miller)*, 39 f.3d 301, 305 (11th Cir. 1994).

> [W]here parties are not on an equal footing intellectually, the courts are particularly careful to scrutinize the evidence to be certain that the party with the greater knowledge does not take advantage of the ignorance of the other party.[23]

In *Baumgarden v. Langles*,[24] the Court found that fraud included "influence, or any advantage, improperly taken, which would not arise in a strong minded person:"

> [A] person may be mentally and physically weakened by disease, without being legally incapacitated to contract, and the law extends its sheltering arms over such persons to the extend of scrutinizing contracts made by them and protecting them from imposition, undue influence, improper advantage and other fraudulent conduct by persons dealing with them.[25]

For example, in *Skannal v. Bamburg, et al*,[26] the Court annulled a contract for fraud because an unjust advantage had been taken over a man with mental defects and alcoholism even though no misrepresentation was shown. In *Gaspard v. Liberty Mutual Insurance Co., et al*,[27] the Court found fraud based on unjust advantage of a person who was uneducated and illiterate. Similarly, *Vanguard Finance, Inc. v. Smith*,[28] the Court found unjust advantage when a man with only a sixth grade education signed sale and loan documents in blank. In *Placid Oil Co. v. Taylor*,[29] the Court found that a highly educated woman took unjust advantage of her uneducated, elderly aunt through an *inter vivos* donation of the woman's mineral interests rather than a *mortis causa* donation. In *Smith v.*

---

[23] *St. Landry Loan Co. v. Avie*, 147 So.2d 725, 728 (La.App. 3 Cir. 1962).

[24] *Baumgarden v. Langles*, 1883 WL 8195, *1 (La. 1883),

[25] *Id.* at *2.

[26] *Skannal v. Bamburg, et al*, 33 So.3d 227, 44,820 (La.app. 2 Cir. 1/27/10).

[27] *Gaspard v. Liberty Mutual Insurance Co., et al*, 243 So.2d 839 (La.App. 3 Cir. 1971).

[28] *Vanguard Finance, Inc. v. Smith*, 256 So.2d 662 (La.App. 4 Cir. 1972).

[29] *Placid Oil Co. v. Taylor*, 345 So.2d 254 (La.App. 3 Cir. 1977).

*Everett*,[30] the Court found fraud based on unjust advantage when there was a "disparity between the education and business experience" of the parties. Another critical factor in most of the above decisions is the shared, close, personal relationships that existed between the parties supporting an increased level of trust by the victim in the perpetrator.

Conversely, Louisiana courts have found no unjust advantage when parties have no close personal relationship or are on equal footing such that there is no great disparity between educational backgrounds, business experience, or mental capacity.[31]

There has been no showing of disparity between the Sigillitos and Hollanders' educational backgrounds, business experience, or mental capacity. The record reflects that Dr. Sigillito is highly educated and utilized several experts and counsel in connection with this transaction. There is no evidence that the Hollanders intended to take an unjust advantage of the Sigillitos nor is there a wisp of evidence that the Sigillitos would have been subject to undue influence. If an omission is made without the intent to gain an unjust advantage or to cause loss or inconvenience, there is no fraud under Louisiana law.[32]

---

[30] *Smith v. Everett*, 291 So.2d 835, 839 (La.App. 4 Cir. 1974).

[31] *Robin v. Binion*, 469 F.Supp.2d 375, 388 (W.D. La. 2007) (No unjust advantage when both parties were sophisticated businessmen.); *American Guaranty Co. v. Sunset Realty & Planting Co., Inc., et al*, 23 So.2d 409 (La. 1945); *Bertolla v. Mitchell*, 397 So.2d 56 (La.App. 2 Cir. 1981);

[32] *Colvin v. Division of Employment Security, Dept. Of Labor, State of Louisiana,* 132 at 912.

**IV.  Conclusion**

For the above reasons, the Court holds that the Sigillitos have failed to establish, by a preponderance of evidence, their claim for fraud.  The Court will enter a separate Order in accord with these reasons.

New Orleans, Louisiana, December 28, 2011.

                                                Hon. Elizabeth W. Magner
                                                U.S. Bankruptcy Judge